This lawsuit is the result of an automobile collision which occurred in Dayton, Ohio during the early morning hours of November 15, 1992. At approximately 3:30 a.m., plaintiffs, Crystal Gray, Bridget Buchanan and Karen Mofield were returning home from an evening spent at a local tavern. As the three proceeded northbound, they entered a construction area on Troy Street in the city of Dayton. At the time of the accident, the east northbound lane of Troy Street was closed for repair. Northbound traffic was diverted by barrels and lane markings to the west side of Troy Street where two-way traffic was maintained. As plaintiffs entered the area of the detour, Karen Mofield recalls seeing a vehicle approach the construction zone from the opposite direction. At first, the oncoming vehicle was travelling in the west southbound lane. However, as it entered the area of the detour, it crossed the center line and moved from the southbound lane directly into plaintiffs' lane of travel. Mofield had no opportunity to take evasive action and the two vehicles collided head-on. As a result of the collision, Crystal Gray and Bridget Buchanan were killed, and plaintiff Karen Mofield was seriously injured. Wayne King, the driver of the other vehicle, was subsequently convicted of driving under the influence of alcohol.
On January 24, 1997, plaintiffs filed suit against Wayne King and the city of Dayton in the Common Pleas Court of Montgomery County. On March 19, 1997, the city of Dayton filed a third-party complaint against the Ohio Department of Transportation ("ODOT") seeking indemnification and contribution for the claims asserted by plaintiffs against the city of Dayton. Plaintiffs' action was then removed to the Court of Claims of Ohio where a pretrial order was entered setting forth, among other dates, a dispositive motions deadline of May 1, 1998.
On May 1, 1998, the city of Dayton filed a motion for summary judgment asserting that it was entitled to immunity pursuant to R.C. 2744.02. Plaintiffs opposed defendant's motion on May 29, 1998. On June 5, 1998, the trial court issued a decision denying the motion. Defendant, city of Dayton, now appeals, raising the following assignment of error:
 The trial court erred when it failed to grant summary judgment in favor of the City of Dayton based on immunity under the provisions of R.C. § 2744, et seq.
When reviewing the allowance or denial of a motion for summary judgment, this court applies the same standard applied by the trial court. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102. Under both the federal and Ohio rules, in order to obtain summary judgment, a party must establish: (1) that there is no genuine issue as to any material fact; (2) that the party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, which conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64. In determining whether a genuine question of material fact exists, a court is always obligated to view the evidence presented in the light most favorable to the non-moving party. Temple v. Wean United,Inc. (1977), 50 Ohio St.2d 317. However, provided a party has satisfied the three-part inquiry set forth above, the non-moving party is not permitted to rest upon the mere allegations or denials contained in his or her pleadings, but must come forth with specific facts showing the existence of a genuine issue for trial. Civ.R. 56(E); Wing v. Anchor Media,Ltd. of Texas (1991), 59 Ohio St.3d 108, 111, following Celotexv. Catrett (1986), 477 U.S. 317. Having applied the relevant law to the facts of this case, we conclude that summary judgment in favor of defendant city of Dayton was appropriate. Accordingly, for the following reasons, we reverse the trial court's judgment denying defendant, city of Dayton, summary judgment, and remand for further proceedings.
Plaintiffs seek to hold defendant liable for its design of a traffic "channelization" plan for the Troy Street construction project which plaintiffs contend violated the Ohio Manual of Uniform Traffic Control Devices ("OMUTCD"), and for that reason constituted a public nuisance. The Troy Street renovation project was administered by ODOT. The project was authorized by the city of Dayton by way of a resolution passed on July 29, 1992. Pursuant to that resolution, ODOT was authorized to enter into a contract with SK Construction to perform the actual construction work and repairs. SK Construction was the general contractor in charge of the site and was the entity who performed the day-to-day physical work on site. As the administrator of the contract, ODOT was responsible for conducting inspections and insuring SK Construction complied with the project design and specifications which were furnished by defendant. Defendant drafted the design plans and specifications for the work in question, including the plans for the maintenance of traffic flow during the course of the project. Although defendant drafted the plans and specifications, it was not responsible for the inspection of any work completed in connection with the project, nor was anyone in defendant's employ present or in control of the project during construction.
As designed, the detour of northbound traffic to the west side of Troy Street required drivers to negotiate a lateral movement at roughly a thirty degree angle. The purpose of the lateral movement was to move southbound traffic to the right side of the roadway in order to avoid northbound traffic as it moved past the area of the detour. The record reflects that the detour was sectioned off with orange barrels and that the lanes through the construction zone were marked with double yellow lines of reflective paint. Additionally, a road construction sign was erected along with a reduced speed limit sign. No other device or sign was employed.
Generally, a political subdivision is not liable for damages inflicted as a result of the performance or implementation of a governmental or proprietary function. R.C. 2744.02(A)(1). However, R.C. 2744.02 lists several exceptions to the general rule. Here, plaintiffs base their claim against defendant upon R.C. 2744.02(B)(3), which provides that a political subdivision may be liable for their failure to keep public roads or highways "open, in repair, and free from nuisance."
In their attempt to establish defendant's liability, plaintiffs argue that the nature of the Troy Street detour required signs and other traffic control devices in addition to those called for in defendant's original design. Upon review, however, we find that plaintiffs' claim that defendant is liable for its design of the Troy Street renovation project fails as a matter of law.
In Franks v. Lopez (1994), 69 Ohio St.3d 345, plaintiffs attempted to impose liability upon Sandusky Township for an allegedly defective intersection. Specifically, plaintiffs claimed that the intersection was defectively designed, constructed, and maintained, and that the combination of the lack of a posted speed limit, lack of lighting at night, and lack of an adequate warning sign combined with a sharp curve to create a public nuisance. While the court determined that a question of fact existed as to whether Sandusky Township failed to maintain the intersection in compliance with the mandatory requirements of the OMUTCD, it specifically rejected the plaintiffs' claims premised upon defective design, construction, and lack of discretionary signage. The court explained:
 Appellants * * * have asked us to expand our nuisance definition to include design and construction defects and the failure to erect signage. This we decline to do. This court has never held that defective design or construction or lack of signage constitutes a nuisance. These categories simply do not constitute a nuisance as this term has been defined by this court. Additionally, these allegations involve discretionary functions as provided in R.C. 2744.03(A)(3) and (5). Thus, the defenses found in R.C. 2744.03(A)(3) and (5) preclude the imposition of liability on a political subdivision for any acts or omissions related to these discretionary functions. Therefore, appellants' claims pertaining to defective design and construction and the failure to install signage must fail * * *. [Id. at 349-350.]
Plaintiffs attempt to avoid the impact of the Franks decision by arguing that defendant's design violated certain mandatory provisions of the OMUTCD. However, plaintiffs have come forward with no specific provision upon which to rest their claim. Plaintiffs also attempt to distinguish the Franks decision arguing that a distinction exists between the lack of traffic control devices on a normal roadway vis a vis traffic control devices on a roadway under construction. However, the cases upon which plaintiffs rely are appellate decisions from other districts, both of which were decided prior to the release of the Franks decision. See Patton v. Cleveland (1994), 95 Ohio App.3d 21; and Marcum v. Adkins (March 28, 1994), Gallia App. No. 93CA17, unreported.
The Marcum case involved a county highway crew which had temporarily stopped at the side of the road to clean a blocked storm sewer. Unlike this case, the crew failed to erect mandatory construction warning signs around the worksite in violation of specific provisions contained in the OMUTCD. Indeed, a road crew flagperson had been dispatched to the worksite but had failed to put the required signs in place. Similarly, in Patton, the city of Cleveland failed to place certain mandatory traffic control devices around the worksite of a city sewer crew excavation.
Both Marcum and Patton are factually distinguishable from the case at bar. In this case, the evidence before the court demonstrates that defendant complied with all of the mandatory provisions of the OMUTCD, including the placement of signage, in its design of the Troy Street construction project. Having given the matter due consideration, we decline to create a judicial distinction between traffic control devices on a normal roadway and traffic control devices on a roadway under construction based upon the Marcum and Patton decisions.
Pursuant to the Ohio Supreme Court's decision inFranks, plaintiffs' claim that defendant is liable for its design of the Troy Street construction project fails as a matter of law. Moreover, plaintiffs' claim that defendant violated certain specific provisions of the OMUTCD fails as plaintiffs have come forward with no specific traffic control device mandated by the OMUTCD which defendant failed to incorporate into its design. Having carefully reviewed the matter, we conclude that defendant is entitled to immunity from plaintiffs' claims as provided in R.C. 2744.03(A)(3) and (5). Accordingly, we sustain defendant's assignment of error, reverse the judgment of the Court of Claims of Ohio, and remand for further proceedings consistent with this opinion.
Judgment reversed; cause remanded.
KENNEDY and DESHLER, JJ., concur.